# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA A. RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. ED CV 10-1153 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION AND SUMMARY

On August 13, 2010, plaintiff Debra A. Rodriguez ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI"). [Docket No. 3.]

On March 3, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 12, 13, 14.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, the Administrative Law Judge ("ALJ") improperly evaluated the opinion of Plaintiff's

examining physician. The Court thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 53 years old on the date of her most recent administrative hearing, has completed the tenth grade.[1] (*See* Administrative Record ("AR") at 108, 129, 161, 556, 598.)

On May 26, 2005, Plaintiff filed for DIB and SSI, alleging that she has been disabled since June 1, 2000 due to hepatitis C, thyroid disease, vision problems, arthritis, degenerative disc disease, carpal tunnel syndrome, anxiety, insomnia, and ear aches. (*See* AR at 19, 43, 44, 61, 67, 108, 147, 153.)

On December 19, 2006, Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. (AR at 552-77.) The ALJ also heard testimony from Victor Schorn, M.D., a medical expert ("ME") and Mary Jesko, a vocational expert ("VE"). (*Id.*; *see id.* at 48.)

On January 9, 2007, the ALJ issued a partially favorable decision granting Plaintiff's request for benefits for a closed period from June 1, 2000 until December 1, 2006. (AR at 48-55.)

Plaintiff appealed and, on January 11, 2008, the Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings. (*See* AR at 58-60.) The Appeals Council determined that Plaintiff "was never entitled to [DIB]" and "[t]herefore, [Plaintiff's] application for a period of disability and [DIB] was not properly before the [ALJ]." (*Id.* at 58.) Also citing a number of other errors, *inter*

---

[1] At times, Plaintiff also reported that the highest level of education she completed was the eighth grade. (*Compare* AR at 129, 161, 556 *with id.* at 445, 582.)

*alia*, in evaluating the medical evidence and determining Plaintiff's past relevant work, the Appeals Council remanded the case so that the ALJ could "take appropriate action to resolve the issues cited" and "offer [Plaintiff] an opportunity for a hearing and a new decision." (*Id.* at 60.)

On November 18, 2008, Plaintiff, proceeding *pro se*, appeared and testified at a subsequent hearing before the ALJ. (AR at 578-97.) At the hearing, the ALJ ordered a more "up-to-date examination by a specialist in either neurology or orthopedics" and continued the case. (*Id.* at 595.)

On March 30, 2009, Plaintiff, proceeding *pro se*, appeared and testified at a third hearing before the ALJ. (AR at 598-609.) The ALJ also heard testimony from Joseph Mooney, a VE. (*Id.*)

On June 18, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 19-32.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her application date. (*Id.* at 22.)

At step two, the ALJ found that Plaintiff suffers from a severe impairment "of the musculoskeletal system." (AR at 22 (bold omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, met or medically equal the severity of any listing set forth in the Social Security regulations.[2] (AR at 22-23.)

The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and

---

[2] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.

determined that:

> beginning with the application date of May 26, 2005 to May 3, 2006, [Plaintiff] had the [RFC] to perform the full range of medium work consisting of lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking for 6 hours out of an 8-hour work day, and sitting for 6 hours out of an 8-hour work day. Beginning on May 3, 2006 and continuing through the date of this decision, [Plaintiff] has been limited to light exertion. [Plaintiff] can push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours out of an 8-hour work day, and she can sit for 6 hours out of an 8-hour work day. She is precluded from walking on uneven terrain, climbing ladders, or working at heights. She requires a sit/stand option every hour for a few minutes.
> [Plaintiff] is limited to simple, repetitive tasks.

(AR at 23 (bold omitted).)

The ALJ found, at step four, that Plaintiff has no past relevant work. (AR at 30.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including housekeeper, cleaner, cashier II, and packager. (AR at 30-31 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 20, 31.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 5-7, 13.) The ALJ's decision stands as the final decision of the Commissioner.

---

2007).

4

# III.
# STANDARD OF REVIEW

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. whether the ALJ properly evaluated the opinion of examining

psychiatrist Oluwafemi Adeyemo, M.D. ("Dr. Adeyemo"), (*see* Joint Stip. at 5-13, 16-17); and

    2.     whether the ALJ erred in his step-five evaluation. (*Id.* at 17-21, 23-24.)

Under the circumstances here, the Court finds the issue of the ALJ's evaluation of Dr. Adeyemo's opinion to be dispositive of this matter, and does not reach the remaining issue.

## V.
## **DISCUSSION AND ANALYSIS**

A. <u>Evaluation of the Medical Evidence</u>

Plaintiff argues that "the ALJ rejects Dr. Adeyemo's opinion [for] legally insufficient reasons." (Joint Stip. at 8.)

    1.     <u>The ALJ Must Provide Specific and Legitimate Reasons Supported by Substantial Evidence to Reject an Examining Physician's Opinion</u>

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians:

(1) those who treat the claimant (treating physicians);

(2) those who examine but do not treat the claimant (examining physicians); and

(3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*,

812 F.2d 1226, 1230 (9th Cir. 1987).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons.") (italics in original).

"Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725.

The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

2. <u>The ALJ Improperly Evaluated Dr. Adeyemo's opinion</u>

Having carefully reviewed the record and the joint stipulation, the Court is persuaded that the ALJ's assessment of Dr. Adeyemo's opinion regarding Plaintiff's mental impairments is not legally sufficient and/or supported by substantial evidence. Six reasons guide this Court's determination.

First, the ALJ's rejection of Dr. Adeyemo's opinion because he has "had several reports from this source, and [has] found them all to be exaggerated in the assessed limitations and totally unpersuasive," (AR at 28), indicates a bias against Dr. Adeyemo and casts serious doubt on the ALJ's ability to view Dr. Adeyemo's opinion objectively. *Wentworth v. Barnhart*, 71 Fed.Appx. 727, 728-29 (9th Cir. 2003). The ALJ presents no evidence that Dr. Adeyemo "exaggerates" his "assessed limitations" and his conclusion is improperly based on his past experience with Dr. Adeyemo. *See Reed v. Massanari*, 270 F.3d 838, 843-44 (9th Cir. 2001) (holding

7

that it was improper for the ALJ to reject opinions of doctors based on past decisions that were not examined on the record). Thus, the ALJ's skepticism "flies in the face of clear circuit precedent." *Reddick*, 157 F.3d at 726 ("This skepticism of a treating physician's credibility flies in the face of clear circuit precedent."); *see also Lester*, 81 F.3d at 832 (holding that an ALJ "may not assume that doctors routinely lie in order to help patients collect disability benefits") (internal quotation marks and citation omitted).

Second, the Court disagrees with the ALJ's conclusion that Dr. Adeyemo did not "even come to a firm diagnosis other than an adjustment disorder versus a depressed mood." (AR at 28.) Dr. Adeyemo's diagnosis of Plaintiff's mental impairment was "[a]djustment disorder *with* [d]epressed [m]ood," not "adjustment disorder *versus* a depressed mood," as the ALJ described. (*Compare id.* at 446 (emphasis added) *with id.* at 28 (emphasis added).) Accordingly, the ALJ's paraphrasing of Dr. Adeyemo's diagnosis is not accurate. *See Reddick*, 157 F.3d at 722-23 ("[T]he ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Third, the ALJ's rejection of Dr. Adeyemo's opinion because he "reported reviewing a Beck Depression Inventory II score of 41 . . . , [which] is not contained within the file," (AR at 28), is not a specific and legitimate reason. Under the circumstances here, the ALJ should have contacted Dr. Adeyemo for the records reviewed by him given his belief that Dr. Adeyemo's opinion was unsupported. *See* 20 C.F.R. §§ 404.1512(e)(1) & 416.912(e)(1) (if evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed

information is readily available); *see* Social Security Ruling ("SSR") 96-5p,[4/] 1996 WL 374183, at *6 ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

Third, the ALJ erred in rejecting Dr. Adeyemo's opinion based on Plaintiff's denial of "depressive symptoms to her treating sources." (AR at 28.) Defendant similarly argues that "[i]f Plaintiff were truly as disabled as she alleged, it is likely that she would have reported symptoms to her physicians, or sought treatment from a psychiatric professional" and "[s]he did neither." (Joint Stip. at 15.) However, while Plaintiff did report that she was not depressed on one occasion to a treating source, (*see* AR at 242), and testified during her first administrative hearing, "I don't feel I am depressed," (*id.* at 576), Plaintiff also reported depressive symptoms to various sources. For instance, she indicated on separate occasions that she "is feeling somewhat fatigued generally," is suffering from "extreme insomnia," she was "not sleeping well since her husband passed away," "stopped taking [antidepressants] because of the side effects" and found the "sadness comes and goes." (*Id.* at 242, 330, 392, 482); *see Green v. Astrue*, 2011 WL 782390, at *2 (C.D. Cal. 2011).

As the Ninth Circuit teaches, "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do

---

[4/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

9

not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that the claimant's failure to pursue treatment did not constitute a legitimate reason for rejecting an examining psychologist's opinion that the claimant suffered from a severe depressive disorder). "Thus, the fact that [Plaintiff] may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [Dr. Adeyemo's] assessment of [Plaintiff's] mental condition is inaccurate." *Id.*

Fourth, Defendant argues that the ALJ "properly gave the greatest weight to the opinion of [psychiatric] consultative examiner Sanford Shapiro, M.D. [("Dr. Shapiro")]." (*See* Joint Stip. at 13-14.) However, Dr. Adeyemo issued his report over two and a half years *after* Dr. Shapiro's assessment and therefore provided a more recent evaluation of Plaintiff's mental impairments. (*Compare* AR at 330-34 *with id.* at 444-47); *see also Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (holding that medical evaluations prepared several months before hearing are not substantial evidence sufficient to rebut more recent conclusions by treating doctor where claimant suffered from a condition that was worsening).

Further, Dr. Shapiro reviewed only a single progress note in performing his evaluation and his opinion should be afforded minimal weight. (*See* AR at 330 (Dr. Shapiro indicating he reviewed "a progress note dated 11/11/03"); *see also id.* at 444 (Dr. Adeyemo indicating he reviewed at least nine treatment notes or medical reports dated from September 4, 2007 through February 4, 2008); *see* 20 C.F.R. § 416.917 (consultative examiners should be provided with necessary background information regarding the claimant's condition); *see Ladue v. Chater*, 1996 WL 83880, at *5 (N.D. Cal. 1996) (error for an ALJ to afford considerable weight to an examining physician where that physician "lack[s] important background information regarding plaintiff").

Fifth, the ALJ's adoption of the opinion of non-examining and non-treating

physician H.N. Hurwitz, M.D. ("Dr. Hurwitz"), standing alone, does not constitute "substantial" evidence here. (AR at 28 (ALJ adopting Dr. Hurwitz's opinion), *see id.* at 336-38 (check-box form completed by Dr. Hurwitz indicating Plaintiff does not suffer from any severe mental impairments)); *Lester*, 81 F.3d at 832 ("In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . the examining [physician]'s opinion."); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion, *with nothing more*, does not constitute substantial evidence[]") (internal quotation marks, brackets and citation omitted) (italics in original); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (opinions supported by explanation and treatment records cannot be outweighed by opinion of nonexamining physician "who merely checked boxes without giving supporting explanations").

      Sixth, Defendant argues that "even if the ALJ erred in not giving greater weight to Dr. Adeyemo's opinion, any such error was harmless." (Joint Stip. at 15.) However, Defendant presents no evidence that an RFC of light work and a limitation to simple, repetitive tasks necessarily include other limitations opined by Dr. Adeyemo, *e.g.*, "difficulty responding appropriately to co-workers, supervisors and the public."[5/] (*Id.* at 447); *see, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

---

[5/] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

1173-74 (9th Cir. 2008) (a restriction to simple, repetitive tasks adequately captured deficiencies in concentration, persistence and pace).

Under the circumstances, the Court is persuaded that, at a minimum, the record is unclear regarding Plaintiff's mental limitations. *See Payan v. Chater*, 959 F. Supp. 1197, 1205 (C.D. Cal. 1996) ("Remand is appropriate if the record is incomplete and additional evidence could complete the record."). Accordingly, the Court declines to find, as is suggested by Defendant, that the ALJ's error was harmless.

## VI.
## **REMAND IS APPROPRIATE**

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, remand is required because the ALJ failed to properly evaluate Dr. Adeyemo's opinion.

Because the Court concludes that the ALJ erred in assessing Dr. Adeyemo's opinion, it does not reach Plaintiff's remaining contention. (*See* Joint Stip. at 17-21, 23-24); *see also Hayes v. Astrue*, 270 Fed.Appx. 502, 505 (9th Cir. 2008). The ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. In

addition, if necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's mental limitations. The ALJ shall then, with the assistance of a VE, determine if Plaintiff can perform other work existing in significant numbers in the national economy.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: July 11, 2011

_____
Hon. Jay C. Gandhi
United States Magistrate Judge